STATE v. LUCIUS ROBINSON.

(Filed 4 May, 1921.)

1. Homicide—Self-defense—Evidence—Criminal Law—Appeal and Error.

Where upon the trial for a homicide there is evidence tending to show that the deceased had drawn his pistol on his brother after a quarrel between them, at the same time threatening his life, and then they commenced shooting at each other, which resulted in death, upon the trial for a homicide the prisoner, by his own testimony, may show, with the burden of proof on him, that without default on his own part he had shot and killed under a reasonable apprehension of his own death or great bodily harm; and the exclusion of his answer to a question to the effect that he so believed when he fired the fatal shot, is reversible error on his appeal, which will entitle him to a new trial.

2. Same—Instructions—Trials.

Where evidence of self-defense is erroneously excluded on the trial for a homicide, the error is emphasized by an instruction to the jury that a verdict of guilty of manslaughter at least should be returned, unless the jury should find that the prisoner had abandoned the fight in good faith or had signified his purpose to do so before firing the fatal shot.

INDICTMENT for murder. Appeal by defendant from *Ray, J.,* at January Term, 1921, of UNION.

In proper time the solicitor announced that a verdict of murder in the first degree would not be insisted on, and the cause was submitted to the jury as to the lesser offenses included in the charge. Defendant was convicted of the crime of manslaughter. Judgment, and he excepted and appealed, assigning errors.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Vann & Milliken, Williams & Stewart for the defendant.*

HOKE, J. There were facts in evidence for the State tending to show that on 22 October, 1920, the defendant, Lucius Robinson, his brothers, Noah and Fred, and two nephews, John and Martin Robinson, were going to Monroe, N. C., in a Ford automobile. That Noah Robinson, the deceased, and defendant began a quarrel in the car. That Lucius got on the ground and "after the word damn was used" commenced firing, inflicting on Noah a mortal wound from which he died some time that night.

There was other testimony to the effect that the five men were going to Monroe in the automobile and Fred, one of the brothers, became sick and it was decided best to return. That Lucius wished to go on and

got out of the car, and after some angry words between him and Noah, the deceased, defendant started walking to Monroe. That, wishing to induce Lucius to go back with them, John, who was driving, turned the car and backed it up the road after Lucius. Passing him about three steps, Noah, the deceased, said to Lucius, "G— d— you, get in this car and go home." Lucius made no effort to get in and Noah drew his pistol and said, "Damn you, I will kill you if you are the last brother I've got." Noah drew his pistol just as he said "Damn you, I'll kill you if you are the only brother I've got," and at that time the shooting began. (This witness said he did not know which fired first.) And in the shooting, Noah received a mortal wound from which he died that night as stated.

During the trial, when defendant was testifying as a witness in his own behalf, after admitting that he had shot Noah, he was asked whether at the time he fired he believed Noah was about to shoot him. On objection the question and answer were excluded. The answer would have been that the witness believed the deceased was going to kill him. This same question, substantially, was put to the witness in different forms and both question and answer excluded, as follows:

"State, Mr. Robinson, whether or not you would have shot Noah unless you had thought he was about to shoot you."

Again, "When you saw him with a pistol in his hand and he told you to get in the car, what did you think?"

Further, "You may go ahead and tell his Honor and the jury, Mr. Robinson, when your brother Noah drew his pistol and told you to get in the car what, if anything, did you believe he was going to do?"

Another, "Please state whether or not, Mr. Robinson, at the time you fired at your brother you believed he was about to shoot you."

On the facts presented, the principle of self-defense would arise to defendant if, being in no default himself, he killed his brother when he believed and had fair and reasonable ground to believe that he was in danger of death or great bodily harm from his brother's assault. While, in order to sustain this position, defendant must satisfy the jury that he had a fair and reasonable ground to apprehend some harm to himself and it was necessary to kill for his own protection, the evidence excluded by these rulings in some form should have been received as tending to establish defendant's right of self-defense.

The decision is emphasized by the fact that the judge, among other things, instructed the jury that if defendant entered into the fight willingly he would be guilty of manslaughter, at least unless before the killing he abandoned the fight in good faith, and in some way signified his purpose to do so, under the doctrine approved in *S. v. Kennedy,* 169 N. C., 326. In this aspect of the case, also, the excluded evidence

bore directly on the issue of guilt or innocence and should have been received.

By the ruling of his Honor we are of opinion that the defendant has been erroneously deprived of the right to testify in his own behalf on matter material to his defense, and is entitled to a new trial.

New trial.